Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Cates presiding along with Justice Barberis and Justice Warden. The first case on the docket is 519-0338 Hood v. Leahy. Arguing for the docketer is Joseph Blyer. You will see the digital timekeeping device on the clerk's screen. Each side will have 20 minutes for their argument. The appellate will also have five minutes for rebuttal. Please remember only the clerk of the court is permitted to record these proceedings. Mr. Leonard, good morning. Good morning, Your Honor. You can hear me okay? I can, yes. Okay. As if we were sitting on the bench, I just want you to know that I have notes in front of me and I also have the record up on another screen. So if I'm looking this way, it's not that I'm not paying attention to you or Mr. Blyer. I'm reading something. So anyway, if you're ready to begin, please begin, sir. Thank you. Honorable justices of the appellate court, Mr. Blyer, may it please the court. First of all, I'd like to point out the pleadings basis for this case. We filed a complaint in negligence and the defendant filed an answer with affirmative defenses. We filed our reply denying those affirmative defenses. After that, the defendant filed a motion for summary judgment without any supporting affidavits. The only support for the motion other than the defendant's characterization of the evidence which we had presented to them was that the defendant did not have any support for the motion. The defendant did not have any support for his interrogatories. There was nothing provided by the defense in regard to the affirmative defenses at any point in time during the proceedings. Now, as the court I'm sure is aware, we're here on question of whether or not the trial court ruled properly on the motion for summary judgment. In order to support the motion, he need only establish that the plaintiff had failed to produce sufficient evidence on at least one element of the cause of action in order to withstand the motion. Now, as far as the plaintiff's motion for summary judgment, of course, we would have to establish evidence on all four elements of the cause of action. We believe we did that sufficiently and Mr. Blier, on behalf of the defendant, has pointed out in his position, I believe, is that the evidence upon which we relied was either not admissible because of the Dead Man's Act or did not amount to admissible evidence because it was mere speculation. We don't think that is correct. The application of the Dead Man's Act in our position would only potentially apply to any testimony from Mr. Hood, my client, since he is a person interested in the proceedings. Even if he testified, were he alive to testify? I'm sorry, Your Honor. Mr. Hood is the decedent whom my client, Larry Hood, represents. So I was referring to Larry Hood. I'm sorry. But even if Carl Maxie Hood were here to testify, wouldn't he be able to testify to facts that were not disputable by the other party? Absolutely. So there's not a blanket denial of his ability to testify. I agree with that. Okay. Additionally, so again, Larry Hood, the executor, is the only person who we have as a witness who would potentially be eliminated from testifying by the Dead Man's Act. Mr. Larry Hood was never deposed. The depositions were taken by the defendant after the motion for summary judgment was filed. And those depositions were of four police officers, all of whom were present at the scene, and an accident reconstructionist who was hired by the plaintiff. Now, the elements of our cause of action, of course, first we have to demonstrate that Mr. Hampton, defendant's decedent, had a duty. It's undisputed that he was driving on a public highway, so he had a duty to drive safely to protect other persons on the highway. There's ample evidence to show that he breached that duty by the testimony of the accident reconstructionist, whose estimate was that Mr. Hampton was traveling at a speed much in excess of the speed limit, 65 to 75, or 65 to 70 miles per hour. And his opinion was based upon all of the information contained in the depositions of the four officers who were on scene, as well as information provided by Larry Hood, the executor, who provided information about the physical situation regarding the highway itself afterwards. The breach element is the speeding we mentioned, failure to keep a lookout, and failure to take action to avoid the collision. Mr. Hampton admitted to Trooper Kimball that he did see Mr. Hood pull out onto the highway in front of him. There was no evidence from anybody that there were any skid marks preceding the point of collision, and so there was no effort to stop by Mr. Hampton. Mr. Hampton additionally admitted to Jason Stewart, the deputy who conversed with him at the scene, that he had hit the accelerator instead of the brake. That is an admission of the decedent, which is admissible against his estate, and I believe, unfortunately, this court's ruling in Bramlett v. Vandersand is applicable here, but unfortunately that opinion didn't come down until about two and a half weeks after our reply brief was filed. So there's no mention of that in the record. And I was going to ask both of you gentlemen whether or not you would like the ability to supplement your briefs with Bramlett v. Vandersand, which was written by this court. I would like to do so, Your Honor. As well as perhaps Eister v. Conrad. I know that Bramlett came out after your briefing schedule, so Mr. Leonard, if you would like to have how many days to brief this. It's a supplemental. It's going to be limited to a few pages. What does the other justices want? Seven, ten pages. Pages? I wasn't sure if you were referring to days or pages. Pages. It's in the pages. Right. It's probably a fairly simple one case to address. No more than ten, certainly, but I think it could be done in seven. Okay. Well, let's try for seven, but we won't ding you if it's ten. But how many days would you like, Mr. Leonard? Your Honor, if we could have 14 days, I would appreciate that due to my schedule. Okay. We'll give you 14 days, and then Mr. Bleier will give you ten days to respond, or do you need 14? That's fine. Fourteen is fine, Your Honor. I think you answered my question. Mr. Leonard is going to address it, and then I reply to his response. Is that correct? Yes, and your supplemental brief would be limited to his, as a reply brief, to his comments. We'll give you a couple extra minutes in light of the fact that I've delayed you, Mr. Leonard. Both cases, Iser v. Conrad, as well as Bramlett, can be discussed in the supplemental proceedings from this court. Nothing else. Okay? Thank you, Your Honor. The clerk is directed to issue an order in that regard. Okay. Go ahead, Mr. Leonard. Thank you, Your Honor. And if you would like to discuss Bramlett at this time for the benefit of the other counsel, you are welcome to do so. Well, the portion of the Bramlett case, as I understand it, that would apply here is the issue of whether or not the statements made by the defendant's decedent would be admissible in the case at trial. And the underlying problem with that case was defense counsel in that case took the position that one of the statements from defendant's decedent was taken improperly in violation of ethical rules. The court ultimately decided that that was not the case and that the statement could additionally be considered because it was an admission of the defendant's decedent and that those are admissible in the proceedings, stating that an admission by a party is admissible against a person's estate after death, citing Rennick. Death does not erase an admission from a party's lips, citing Rennick again. And the statement under oath contains relevant admissions by the decedent. These admissions are not barred by the Dead Man's Act. Decedent's admissions create a genuine issue of material fact regarding decedent's negligence. And that is our position with respect to Mr. Hampton's admissions. Another statement that was made to Deputy Jason Stewart was, I believe, a false exculpatory statement, which would be admissible against the defendant. And I must point out that there is a typographical error in my reply brief. On page three, I made a reference to items 2B and 2B in one of the paragraphs, and it should have been 2A and 2B, so I apologize for that. But that is where I referenced this false exculpatory statement. In Jason Stewart's deposition, he testified that Mr. Hampton had indicated to him that decedent Hood was stopped in the highway. Both of the state troopers testified in their depositions that they saw no evidence of that. And both of them testified that Mr. Hood's version of what he had explained, that he had exited the side road onto the coal mine road and was proceeding about 18 or 19 seconds before he was struck from the rear, was consistent with the appearance of the scene. And they both gave opinions to the effect that they found fault for the accident with Mr. Hampton and no fault with Mr. Hood, the decedent Hood. Do you think that the admissibility of fault, I'm sorry, do you think fault opinions are admissible? Well, I think a false exculpatory statement would be admissible, and my characterization would be that Mr. Hampton was trying to exculpate himself by putting the blame on Mr. Hampton for being stopped in the highway of which there was no evidence. But you would agree that it's the jury's province to decide fault. The issue here is whether there's a question of fact, right? This was on summary judgment. Yes, Your Honor. Of course, the jury could rule either way on that portion. But my point is the only thing this court needs to decide is whether, one, there are sufficient admissible facts to create a question of fact. Do you agree or disagree with that? I agree. Okay. One of the things I didn't understand in this is Carl Maxie Hood was killed as a result of the accident right away. Dead on impact, no? No, that's not correct, Your Honor. He died several months later. Okay, so were depositions taken of either of the parties? No. And how did Mr. Hampton die? I found that weird. Well, Mr. Blyer would have to answer that, I think, Your Honor, because we were only informed that he had passed away prior to the filing of the suit. I think he even passed away prior to his court date on a ticket that was issued. But it wasn't as a result of this accident. I don't believe either person's died as a direct result of the accident. Okay. And did Mr. Blyer – you attached a lot of documents to your motion for summary judgment, right? Correct. Yes. Did Mr. Blyer do the same? Attach depositions or anything? My recollection is no. He relied on his client's responses to our interrogatories. I saw the interrogatory answers, and they were verified by the representative, I believe. Okay. Go ahead with your argument, Mr. Leonard. Thank you, Your Honor. We would – also, the statement of Mr. Hood at the scene given to Sheriff Brenner, we have argued in our brief and maintained that would be admissible and should be considered by the court because it was an excited utterance. It was basically so characterized by Sheriff Brenner. He said that he was excited and agitated when he made the statement right after the accident had occurred. Now, another thing that Mr. Blyer apparently has found fault with is the affidavits. There were only three affidavits, I believe, that were provided in support of our motion for summary judgment. Those were the affidavits of Sheriff Brenner, Troopers Kimball, and Rapp. And the only purpose that those affidavits were presented for was to demonstrate that the physical damage to Mr. Hampton's vehicle was greater than the physical damage to a very similar automobile. He was driving a 2007 Dodge Charger, and our accident reconstructionist had photographs of a collision involving a 2008 Dodge Charger, which are virtually identical automobiles. And it was a safety administration testing process where the collision had occurred at 35 miles per hour, I believe, with a stationary object. And both officers stated in their affidavits, or all three rather, that the damage they observed on Mr. Hampton's vehicle was greater than the damage that was displayed in the information provided by our accident reconstructionist. So the defendant argues that those affidavits are not to be considered by the court because they don't state facts. Well, those were only... I don't understand that argument. What facts don't they state? Because it's a different car? They still state facts. That's my point. That's my position exactly, Your Honor. They do state facts. So the court should consider the affidavits. And the court basically threw them out? Is that what happened? I don't think the trial court ever ruled. Mr. Blyer asked that they be stricken, but the trial court never addressed that request. The trial court merely granted his motion for summary judgment. Yeah, I didn't see that in any order that the affidavits were stricken. So it's hard to know what the court did in this regard on that. Would you agree? I would agree. I saw in the record that Trooper Kimball did kind of a reenactment of the scene. I guess on his own to determine whether Mr. Hood had given a true or false statement. He did that for that purpose, I believe. And also, I believe this testimony indicated that he did that to confirm what Mr. Hood had told him, also to provide him with a basis whether or not to issue the citation that was ultimately issued to Mr. Hampton. Now, Mr. Blyer claims that your affidavits don't comply with Rule 191A. Could you maybe address that argument? Well, I don't have that rule right in front of me, Your Honor, but my recollection is that that rule requires that statements contained in affidavits have to be statements of fact, which could be testified to at trial if there were a trial. You can't state conclusions or hearsay. Of course, conclusions would be permissible, I believe, if you're an expert witness. But as far as the factual basis is concerned, you have to be able to testify in the affidavit that it's based on your personal knowledge. Well, can't it be based... And maybe this is a better question for Mr. Blyer, but he claims that the troopers' test observations were speculation and conjecture. What would you say to that? I would say that is not correct, and I would call the court's attention to the case we cited in our brief Tipsworth v. Melrose, in which the court ruled that state police officers who have broad experience can testify as experts, so they can rely upon what they were told by people who were at the scene of the accident. And even though they were not at the scene of the accident when it occurred, they were told by both parties information in this case. And so those statements survived the decedents, so to speak, and that would be our response, Your Honor. Okay, thank you. And so those statements made by the decedents in this case, coupled with the officers' personal observations at the scene, you feel that those combined can make for an admissible testimony for those individuals? I think what the officers observed would corroborate the statements, but the statements themselves, our position would be admissible. Yes. So to follow up with what Justice Barberos just indicated, then, the relief you're asking for is that because these statements are admissible, you've raised a genuine issue of material fact as to whether or not this case should go to trial, and we should reverse the summary judgment? Is that the relief you're asking for? Yes. Okay, did you raise any other issues with regard to the propriety of any other rulings in this case that maybe we missed? Well, I don't, I would be surprised if you missed them, but I did. Thank you. I did. I'm sure we all thank you for that. Well, I did raise the point that we believe that the trial court was also in error. In addition to granting the defense motion for summary judgment, we raised the issue that it was in error in denying our motion for summary judgment. Okay. Thank you. Okay. Did you want to make a concluding statement, Mr. Leonard, or you went away for rebuttal? I think I'll wait for rebuttal, Your Honor. Thank you, though. Okay. Mr. Blyer? Am I on mute? Yes. Good morning. May it please the court. As you know, my name is Joe Blyer. I'm here representing the defendant, Apelli, in this particular case. This is kind of an unusual case, and it sounds like all the issues, it would be a good law school question on evidence as it relates to circumstantial evidence, the Dead Man's Act, and other issues. But I believe the position of the defendant in this particular case is that the plaintiff is trying to prove his case or get past the summary judgment with circumstantial evidence. And the evidence in the courts, we all agree there's even an instruction on circumstantial evidence, but there has to be some factual basis to allow the circumstantial evidence to allow the case to go forward. And, Your Honors, basically the premise of the defendants is that this accident which occurred back on, darn, March 31, 2008, I hope we don't get marked off for taking so long to get to you guys, but it's a long time ago. And, Judge, to answer your question, both of these gentlemen were older people or elderly people. My gentleman passed away due to age after the accident. Mr. Hood passed away sometime. And if it goes back to court, there's a question whether or not the injuries for the accident or something other. But both of them were elderly gentlemen, and I can answer your question as for Mr. Hampton. He passed away just from age and not any injuries from this accident. Be careful, Mr. Blyer. We're getting older, too. Your Honor, yes, yes. And my 91-year-old father still comes to the office. Oh, my God. Tell him hello. And I hope none of us are still doing it when we're all 91. Not me. I hope we're here at 91, but we're not doing the law practice. Ditto. But, Judge, the problem with this case, and I think what Judge Dinn found, is that the plaintiff has to come forward with some evidence as to how this accident happened. It's kind of a two-process. Even taking and allowing the admission of these statements made to various persons by both parties at the scene of the accident, Judge, no one of the statements, even considering all the ones that the plaintiff wants to admit, talks about how the accident happened. They just talk about someone passed someone, someone pulled out. Even the plaintiff's expert, the only expert, he just talked about not how the accident happened. He could only testify as to the closing speeds of the two vehicles. Judge, taking, for the sake of this argument, even if you would allow these statements, utterances, or whatever you want to call them, by both parties at the scene, there is nothing, Your Honor, that allows, unless you speculate past the circumstantial evidence, to get past, to get to the jury. Why can't the observations of the police officers be admitted? The personal observations at the scene. Your Honor, without conceding anything, I will answer that question. I don't disagree. It's like any kind of trial. It's like when we have a regular police officer come to just a simple car crash case. I think a police officer is allowed to testify what he or she observed after arriving at the scene. I think that's pretty elementary, and we've all done that in our car crash cases. But even in the car crash cases, we don't let a police officer give opinions unless they have any kind of expertise or training or did any specific investigation as to where the point of impact is, a thing of that nature. But I agree that a police officer in a car crash case such as this can testify regarding what he or she observed once he or she arrived at the scene. Well, we know that police officers can't give certain information that juries can easily figure out, right? That's correct. But isn't it really up to the trial court to figure out what the officer can or cannot testify to? And then if he can give an opinion based on his experience, then the court allows him to give an opinion. We didn't get that far in this case. Well, that's true, but, Your Honor, and I guess we got to the point that the testimony that the judge didn't consider, the transcripts of the officers, none of the officers, one, had any training in accident reconstruction, did any measurements. Doesn't that really go to the weight, Mr. Blyer, of their testimony? I noticed in one of your briefs, you argued that because the expert didn't take into effect the coefficient of friction, for example. Doesn't that really go to the weight of the testimony, you know, really? Two things about that, Judge. One, I always get amused about the coefficient of friction of every expert we've taken. You know, they used to have that wheel. I'd always want to see that wheel. They'd keep it in their trunk and put it on the pavement and drag it. But, Judge, you still have to have some kind of basis to give an opinion. And I don't mind them giving, but the fact with this case is, it's how this accident happened and where it happened. And none of the police officers, going to your case, they should be allowed or could be allowed to testify, hey, I arrived, one car was here, one car was, as the evidence was, I forgot, excuse me, I can't remember how many miles or feet it was down the road. 0.7. Thank you. And they could testify that. But, Judge, we're here, we still got to, the plaintiff still has the burden to put some kind of evidence as to how the accident happened. Doesn't the personal observations of, you know, they described, I think all the officers described the vehicle driven by your client, the deceased, as basically disintegrating and it stopped because of Newton's laws. It couldn't go any further. It wasn't anything that he did to stop it. And then the other vehicle was struck in the back. When you couple that with Mr. Hood's statement at the scene that he had pulled out of the mine road onto the highway, was driving along for 17 or so seconds, acquired the speed of somewhere between 40 and 45 miles per hour, and then was hit and went flying through the air and ended up in the ditch where his car had rolled. I believe that was the testimony he gave, or not testimony, but the statement he made at the scene. And then coupled with your client's deceased statement that he saw the vehicle pull out in front of him and that he mistakenly hit the accelerator and not the brake. And then his car disintegrated after it hit the back of Mr. Hood's. How is that not a question for the to survive summary judgment? I'm having a real hard time understanding how those combination of statements, if we obviously we have to agree that we have to assume that they're admissible. There's not a dead man's ax issue with it. But presuming that that is the case, how does that not go to a jury? It's a good question. That's why you asked it, Your Honor, and I'll try to address it for you. Could I interject before you deal with the comments of Justice Barbarous to add to that the absence of skid marks, which would indicate no attempt on the part of your decedent to break his vehicle. And you can add that to the other issues raised by Justice Barbarous. Okay, Judge Wharton, I'll answer your question first. There is some testimony, there was no skid marks. But Judge, that's just circumstance that doesn't prove that he broke or that he applied the brakes or didn't apply the brakes. We have anti skid brakes. You know, that's there's all kinds of questions I could come up with. And with experts or even the plaintiff's expert as to why there were no skid marks. We all had cases. I mean, with the new with the new anti braking anti skids, the absence or presence of skid marks in today's world does not necessarily indicate one way or the other, whether there was braking or no braking because of the way the anti skid work and Aren't those questions, though, for the expert? I mean, that's good cross examination. Well, Judge, we still I guess we let me let me ask your question. I'll go back to Judge Barbarous. Okay. Okay. I'll remember your question, you're Always get pushed to the back of the line.   Judge, there's all kinds. I mean, yes, you could say, well, there's a question of fact, question of fact, cross examination. But we still have to get past the first Step of having to have some evidence as to how the accident happened even cross examination about whether or not there's brakes or no brakes or how We still have to have some the plaintiff still has the burden of putting something in with a miscible testimony that the accident happened or how it happened. I guess in this Kind of going back to Judge Barbarous question. There's no question that my clients truck, as they said disintegrated is a lack of better word there was damage to the Dodge, you know, But I guess it's kind of a circular argument, but we still have to get back to the point is to we know that there was both vehicles had an accident. It was on that highway. One person was on one road it before and one person was on another road, but to how it happened afterwards. And that's kind of this circumstantial evidence in one of the case, I think that majestic that I cited, you know, it talks about You can allow circumstantial evidence to prove the case, but you can't allow circumstantial evidence to go forward. If there's more than one conclusion and I can Imagine, I can think of all kinds of different reasons why this thing happened in different conclusions that would permit the circumstantial evidence of saying yes, my guy ran into the back of it. Though, if you answer Justice Barbarous questions which were very specific as to why can't the admissions come in. Are you saying an admission by your client is circumstantial evidence because that's what I hear you saying is the whole case is circumstantial, but just Justice Barbarous is asking you about specific admissions that might be admissible. Okay, I'll address. I'm sorry. Thank you for clarifying his question. Assuming that we get past admissibility and those statements of my gentleman and the plaintiff, the decedent plaintiff were admissible at trial. Assume all that comes in everything but none of the there's not been any testimony even admitting all these statements by either party at the scene as to how the accident happened. What was going on. What was the plaintiff. Did he stop in the road. Did he pull, you know, did he start to get in one lane or the other. So, Judge, I'm trying to answer your question, even assuming all those statements were admissible. It's still circumstantial as to how the accident happened.  Even if you admit the statement by your client who says I hit the accelerator instead of the break. I just got the car. What does that mean when the fact I hit the accelerator. Increasing his speed. Okay. Right. He's increasing his speed and then the expert is going to give an opinion that that increase in speed in light of this the vehicle, whether it was stationary or not. Caused the accident can't do that. How long did he push the seller accelerator. How fast did he get. Did he hit the break after he pushed the accelerator. I mean, there's all kinds of things that that's what I think if we Know, we know that he hit the car. Know that we know that there was a collision between the two vehicles. I'm not going to go that far and say no, there's not a collision. And but we don't know what each of the two vehicles, we're doing at the time of the impact. And I think it's and that's why it's a tough case, but I But, but if we, but if we look if we take into consideration the statement of Mr. Hood at the scene. If we admit that as well. Okay, where he says I pulled onto the street. I was Moving down the road for 15 to 17 seconds and reach the speed of 45 when all of a sudden I was flying through the air after being hit from the rear. Couple that with the statement from your decision. Who saw the vehicle who accelerated accidentally instead of hitting the brake and then his car disintegrated. I don't think there's it in my I have a very hard time figuring out how that's not an accident that occurred. First of all, and secondly, who's at fault for that accident. I think that's a real, you know, easy to determination to make if we make the assumption that the dead man's act doesn't prohibit those statements from coming in. Boy, that seems like a question of fact for the jury to decide and not emotion for summary judgment. Judge I don't want to concede anything but I don't want to tip my hand on how I'm feeling about this, but I think I just did so Well, I'm very observant. I think you think you did very clearly. You made it crystal clear But judge and on the other side, I'm not going to concede that point without an argument, even my last breath. But judge, I assume that if you would let all those in. Yes, it's a tougher question. And then, but we get back to the question as to What you know what those statements come in. I mean, I can't cross examining of how it happened. I can't cross offer any debit debit evidence to rebut it and You know, that's why the in justice case you talked about Bramlett and It's always thought when I read that opinion. It's kind of ironic that the gentleman that took the examination road attorney almond is now deceased to when the case went and he and I talked about that case many times before But in you asked the question earlier about We didn't have any testimony. Both of these gentlemen, I think we're past were deceased before the suit was filed and john Mr. Leonard can correct me on that. But I think they were so there's no Unlike your Bramlett case and we'll address that where they at least had examination under oath and they've relaxed the rules about using discovery depositions. But in this case, I mean, back to the dead man's act. I have no way To rebut anything. How do I mean anything that the decedent told the police officer. I assume we're assuming the police officers correct and and Stating what was said. And I think that's what one of the things about the dead man's act. It kind of prevents someone from making a statement. Relaying a statement of a deceased person without the opportunity to allow the other side to cross examine the or offer testimony as to, you know what the deceased person said Well that and that is absolutely 100% true. And I don't think anyone would argue that that's not what the dead man's act is there for However, the dead man act also has exceptions. Mr. Leonard has raised those has suggested that these those exclusion or those Exceptions apply to this case. And so I think that's where we stand. Do they do those exceptions apply with wasn't an excited under utterance or a statement against interest. And if so, do they get to come in. You only have a few minutes left a couple minutes left. I don't know if you want to use any of your time to discuss that. But to me, that's kind of the hinge in of this is whether or not those statements come in. That is correct. And if you read the motion. The first part of motion for summary judgment had to deal with that and and it was I think that's one of the issues that this court, if it decides that question. It doesn't have to get to the circumstantial evidence question. And I think The fact that This cited utterance, you know, that's what's an excited utterance. I don't, you know, that's another part about it. We're having someone that is telling us what a deceased person said at the scene of the accident when there were no witnesses. To and both persons are deceased. Parties. These are these are, you know, duly sworn Officers, so we presume that their testimony is is is, you know, not falsified but And you have more than one officer who seems to have heard the same statement. So It's not like it's a one on one credibility test. Your tip your tip in your hand to Justice Gates. Well, I, I am very interested in something you just said, which is if we decide the question on admissibility. We don't need to get to the circumstantial evidence issue. Right. Can you tell me what you mean by that. Well, Judge, if, if the statements of the statements of the two decedents at the scene. Are not if you find that the Dead Man Act prevents either one of those You don't even don't even those are the two statements of the circumstantial evidence that since we don't know exactly how the accident happened that If those are out ruled out. We don't have the statements that we talked about earlier in the beginning, this whole presentation today that each of these two persons made a statement like Judge Barbera said about, hey, you know, I got hit in the rear, you know, next I know I was in the ditch. As you pointed out, my client says, hey, I hit the gas instead of the break So if we get and then, you know, I saw him pull out he I pulled out things that nature. If we get rid of those statements. There's nothing left is except that we have two cars that were I think what you say, Judge Barbera point seven miles apart from each other after the impact. So I think, and that's, and that's what I meant by that, Your Honor. What you still have You would still have the expert issue because as you've pointed out, you still have to show causation. Correct. So even though you have the statements which if there is miscible. I guess I disagree with you. I think there's still a circumstantial element. In the case. Well, Judge, I and I guess you and thank you for pointing that out to me and I and I guess when I made that I guess it would make it. Can I go back and say if we don't let those statements and we still we still have a circumstantial evidence. I know I agree with you. We don't have as many circumstantial statements. How's that Perfect. I mean, I really think that you still have a circumstantial potentially a circumstantial issue. Because of causation. Right, right. And and that would that would go to the experts, I guess. That's correct. And, and, you know, and judge a couple cases. Just one. And I know my can I address one things, even on my time's up. It's, is it okay with you, Justice Wharton. Continue. Okay. And about these cops and police officers testimony and experts, you know, the tips worth case and And I think in he in the plaintiff uses that says that's why these police officers could do it. And I realized this tip words case in the deaf and deaf and box. It was mentioned there and Abraham. First thing I noticed about that and I it started like when I first started it kind of that August singer versus pulley here in Williams County, where they remember the old days where if you had an eyewitness to a car crash, you couldn't have a reconstruction expert. And then they change that Augustine versus pulley in both those cases, they kind of even talk about it, but in the tips worth case I noticed that the court. That was an issue, not necessarily whether or not in this building or not, but the court finally ruled that That police officer testify didn't contradict any of the eyewitnesses and it was on a in in the court ruled in it said, how could it be prejudicial. And so they found out it wasn't prejudicial and then a defund back in the Amberson case. Excuse me, we're pro predate that when they talk about this has been my whole problem with the problem with police officers is Police officers. And I think we're back to your first question. Yes, a police officer can testify what he or she observed, but when you start talking about points of impact causation speed. The way they come in together, things that add a coefficient of friction, which I love. You need some kind of training, other than, you know, And Lord knows the police officer have a tough job. But, you know, when, when there's a bad accident. What do they do, they don't let the trooper or the police officer, they call an accident reconstructions Because they're trained and and you guys in the court seen it more sign than other that you know what's to the naked eyes. When you get to the facts and they It could be a totally different thing. And that's my point with these police officers. Yes, they can say what they observed that since the cars weren't there. They were moved and down the road. I think Well, Unfortunately, I have to cut you off here, but I do. I think we, I think we all understand because we're all very experienced, you know, in this we've done been there, done that kind of thing. So, um, but This police officer testimony. I agree with you is it's kind of in a blurry area. But I think that's for the trial court to determine. But Mr. Leonard, why don't you proceed with your rebuttal. Thank you. Thank you, Your Honor. First, with respect to Mr buyers claim that our case is circumstantial evidence, I would submit that the admissions of Mr Hampton are not circumstantial evidence, those would be considered direct evidence, as would the excited utterance of Mr hood describing how the accident occurred. And then the question of the expert testimony that's not circumstantial evidence that is direct evidence, although the opinion may be based on circumstances that are made known to the expert. He still is expert as an expert. He's still providing direct evidence for the jury's benefit. So even if I were to concede that Mr Blyer is correct with respect to the two police officers opinions troopers Kimball and wrap that those should not be considered by the court, which I do not concede. But even if I were to concede that we still have the expert testimony of Mr Gorky the accident reconstruction is and he's he can give his opinion and his opinion is clear. He placed fault for the accident with Mr Hampton and no fault with Mr hood. Now, Leonard, are you saying you can win a case with just an expert. Well, I hope I don't have to court and you when you can win a case like that. I don't know of any basis. I guess whether I'll have to try will be resulting or be a result of your ruling, but The know, but I mean, if you're if the statements come in for whatever evidentiary basis, whether it's an excited utterance or statement admission against interest, whatever it is. If it is an exception under the dead man's act that's going to be direct evidence that you're experts going to use along with the personal observations of the police officers, you have to have the whole Oh, yes. Need all the parts to make the cake right Oh, that's correct. I did not mean to say if you interpreted my statement is indicating that neither the police officers could testify. That's not my point. They both can certainly testify as to the facts of the circumstances that they personally observed. But if the court were to determine that they could not give opinion testimony. In addition to that, we still have the expert opinion testimony of Mr. Gorky now what So with and then with respect to the dead man's act. None of those other witnesses are are barred by the dead man's act because they're not interested in this in this litigation. And so they can testify. But What I would get to Briefly here. Mr. Blyer, I think I tried to give us a little bit of a red herring there on the skid marks with the automatic braking systems and whatnot. That's not the skid mark that might determine the answer. What determines the answer is, were there skid marks from Mr. Hood's vehicle after it was struck in a standing position. His testimony or statement was that he was moving 40 to 45 miles an hour. Had he been stationary, whether Mr. Hampton braked or not, when he collided with Mr. Hood's rear end of his truck that would have caused his truck to leave skid marks and there were none. So that's and then additionally that wasn't raised in the briefs. Additionally, but Wasn't there a gouge mark in the pavement. Yes, there was a gouge mark. Yes. There was no indication as to what caused the gouge mark. Right. I mean, and I'm not speculating, but I'm, I guess I am speculating Based on the disintegration of the front of Mr. Hampton's vehicle. I'm assuming that some metal part was dragging the ground as it proceeded down the road for point seven miles and caused a gouge. But there to clarify Or to follow up with Justice Cates' question, there's no evidence as to what caused the gouge or even where the gouge was in the roadway in relation to the point of impact, correct? I think that's not correct, Your Honor. I think that the point of impact was determined to be where the gouge mark was found. And I believe the causation of the gouge would either be the impact of the rear bumper of the hood vehicle or the front portion of the Hampton vehicle or a combination of the two. So when the collision occurred, one or the other, the bumper went below the front of the Dodge car or the front of the car went below the bumper and make contact with the pavement. That's my belief, Your Honor. The last thing I would like to say is that Make it quickly. The burden of production. I think we have, in the closing portion of our brief, we referred to the case of Triple R Development versus Golf View Apartments dealing with the burden of production. We have met our burden of production with what we have presented in the trial court and to Your Honors. Mr. Blyer's, from Mr. Blyer's side, they didn't meet their burden of production with respect to their motion for summary judgment, nor did they do sufficient to overcome the burden of production that we did meet with our respect to our motion. And I hope I'm not quoting Mr. Blyer incorrectly, but I think he acknowledged in his argument today that if you allow these statements into evidence, he has nothing to rebut them. Well, I don't know that that's Right. And I don't, I don't want to get into that kind of discussion since time is over. But, you know, I do understand, Mr. Leonard, the dilemma that a defendant faces like Mr. Blyer in light of our Eister versus Conrad case. If he attaches depositions, he runs the risk of waiving his claim under the Dead Man's Act. So for either side, it becomes a dilemma as to when you waive your position. So we understand. I think we all on the court understand that issue. And since time is up, we'll have to end this case, but we'll take it under advisement. We'll give you each 14 days as previously ordered by the court. And that will conclude the testimony once we, or the argument, once we get your supplemental briefs, we'll issue an order in due course. Thank you both for appearing. Yes. Before we release, and Jack, before you release everyone out of the, out of the Zoom.